IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| STEWART NEWMAN, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | 8:15CV10 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| SCOTT FRAKES, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Stewart Newman ("Newman") filed a petition for writ of habeas corpus under the provisions of [28 U.S.C. § 2254](#) challenging his conviction for first-degree sexual assault. The Respondent has filed an answer and a full and complete record of the state court proceedings. There is no need for an evidentiary hearing. The matter has been fully briefed.[1] I now deny the petition with prejudice.

### *Newman's Claims*

***Claim One:*** Newman's Fourteenth Amendment rights to due process and equal protection were violated when the Nebraska Court of Appeals dismissed his postconviction appeals because his appeals were perfected under Nebraska statutes.

***Claim Two:*** Newman's Fourteenth Amendment rights to due process and equal protection were violated when the state district court allowed the State's late response to his postconviction motion and did not allow him time to reply to the State's response.

***Claim Three:*** Newman's Fourth Amendment right to be free from unreasonable searches and seizures was violated when he was illegally arrested in his home without a warrant, and his Fourteenth Amendment right to due

---

[1]I compliment Frakes' counsel for her excellent work.

process was violated when false testimony was given and physical evidence was withheld at the suppression hearing on his arrest.

*Claim Four:* Newman's Fourth Amendment right to be free from unreasonable searches and seizures was violated when law enforcement illegally searched and seized his password-protected laptop computer, and his Fourteenth Amendment right to due process was violated when false testimony was given and physical evidence was withheld at the suppression hearing on the search and seizure of his computer.

*Claim Five:* Newman's Fourteenth Amendment rights to due process and equal protection were violated when the Douglas County Jail illegally detained him.

*Claim Six:* Newman received ineffective assistance of counsel in violation of the Sixth Amendment when trial counsel and appellate counsel (who were the same) failed to raise key issues at the suppression hearing, at trial, and on direct appeal.

(Filing no. 1; Filing no. 3.)

## Brief Background

I rely primarily upon the thorough opinion of the Nebraska Court of Appeals for the factual summary of the evidence.[2] *State v. Newman*, 838 N.W.2d 317, 321 (Neb. App. 2013) (holding that: (1) defendant was not "seized," within meaning of Fourth Amendment, when police officers asked him to accompany them to police station for interview; (2) defendant's wife had actual or apparent authority to grant consent to law enforcement to search laptop computer; (3) defendant was not entitled to discharge on charges for visual depiction of child pornography on statutory speedy trial grounds; (4) evidence was sufficient to support conviction for first-degree sexual assault of child; and (5) sentences imposed were not abuse of discretion).

---

[2]Newman has not come close to showing those factual findings are erroneous.

2

This case involves the first-degree sexual assault of a child and visual depiction of child pornography related to one young girl ("Jane"). She was approximately 10 years of age at the time of the events giving rise to the criminal charges.

In February 2010, Jane sent her mother a text message indicating that Newman had been "trying to have sex with [her]." Jane's mother called the 911 emergency dispatch service and reported the allegations and then took Jane to "Project Harmony," where she was interviewed by a member of the Omaha Police Department's special victims/child sexual assault unit.

Following Jane's interview with law enforcement, Newman was arrested after he voluntarily went to the police station, was given his *Miranda* rights, and for all intents and purposes confessed in rather graphic detail to having sex with the child. Sometime later, Newman's wife contacted law enforcement about suspecting that there was child pornography on a jointly owned laptop computer in Newman's home. After obtaining her permission to search the computer, law enforcement searched the laptop, revealing a variety of suspected pornographic images of children, including photographs of Jane.

After a thorough evidentiary hearing was held and two suppression motions were denied, both sides agreed to a trial before a judge. The trial was held, and Newman was found guilty.

Among other things, there was specific evidence that:

> Newman, while 37 or 38 years of age, engaged in a pattern of sexual conduct with a child, beginning when she was 6 years of age and continuing until she reported it at 10 years of age. The evidence indicates that the conduct included touching, licking [her labia], and rubbing of genitals and ejaculation on more than one occasion. Newman was convicted of first degree sexual assault of a child and six counts of visual depiction of child pornography related to photographs he took of the 10-

3

year-old victim. Those photographs depict the child in the nude, posed, with her breasts and genitals exposed, and include an image of the child's hand gripping Newman's erect penis.

*[Id](#)*. at 335.

At the trial, Newman did not dispute that he had engaged in this inappropriate conduct, except to assert that there had never been penetration. He attempted to explain his behavior by indicating that the child in this case had asked questions about sex and that he thought these actions would "curb [her] curiosity" and "educate" her. Newman acknowledged that he took photographs of Jane that included "posing" of her, but testified that the 10-year-old child wanted the photographs taken.

The court sentenced Newman to a term of 45 to 70 years' imprisonment for the first-degree sexual assault of a child conviction, to be served consecutively with six concurrent sentences of 5 to 10 years' imprisonment on each of the visual depiction of child pornography convictions.

As part of the direct appeal, Newman filed the necessary pauper affidavit that contained the required jurat of a notary public. (Filing no. [12-11 at CM/ECF p. 5](#).) Newman's signature appears on the affidavit, as does that of the notary public. The notary's seal is evident on the document. Newman thus knew that to appeal, a pauper's affidavit required both the formalities of an oath administered by, and a signature subscribed before, a notary public.

Thereafter, Newman filed a state postconviction action. He filed a "VERIFACATION" that was signed by Newman under oath before a notary public. (Filing no. [12-13 at CM/ECF p.76](#).) This sworn document was notarized while Newman was incarcerated. Thus, there is no question that Newman had a notary available to him even though he was in prison.

4

Newman essentially tried to litigate yet a second time the suppression motion. He also claimed his counsel, at trial and on appeal, was ineffective for the way in which counsel handled the suppression motions. The state district judge issued an eight-page opinion thoroughly discussing and denying the motion. (Filing no. 12-13, at CM/ECF p. 85-82.) The district judge then granted Newman's request to appeal as a pauper.

However, the Nebraska Court of Appeals, and later the Nebraska Supreme Court, found that the alleged affidavit of poverty had not been notarized and accordingly dismissed the appeal for want of jurisdiction. Newman signed the so-called affidavit claiming he had been sworn under oath, but there is no jurat of a notary public or other indicia of authority appearing on the document. (Filing no. 12-13, at CM/ECF p. 3.)

The Nebraska Court of Appeals wrote:

Appeal dismissed for lack of jurisdiction. See Neb. Ct. R. App. P. § 2-107(A) (2). Appellant's poverty affidavits, filed in lieu of the statutory docket fee, are inadequate because they are not notarized. See State v. Haase, 247 Neb. 817, 530 N.W. 2d 617 (1995) (inadequate poverty affidavit does not take the place of a docket fee).

(Filing no. 12-4, at CM/ECF p. 3.)

The Nebraska Supreme Court agreed. That is: "Petition for further review denied. See State v. Ruffin, 280 Neb. 611 (2010)." (*Id.*)

### *Legal Overview*

The law on federal habeas corpus is well-established. Therefore, I provide only an overview of the most pertinent aspects of that law as applied to this case.

5

### *No Review of State-Law Determinations*

A petitioner will not be allowed to complain about a ruling on a state-law issue and dress it up as a federal claim unless there truly is a federal claim undergirding it. As the Supreme Court has long held, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In particular, "[e]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Carson v. Dir. Iowa Dept. of Correctional Servs.*, 150 F.3d 973, 975 (8th Cir. 1998) (internal quotation marks and citation omitted). A habeas petitioner must therefore "point to the Supreme Court precedent" that he believes the state court "acted contrary to or applied unreasonably." *Evenstad v. Carlson*, 470 F.3d 777, 783-84 (8th Cir. 2006) ("Evenstad's claims boil down to an issue of Minnesota state law and his attempt to recast the issue in a constitutional light is unavailing.").

### *The <u>Stone v. Powell</u> Rule*

The Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465 (1976), bars this court from reviewing many Fourth Amendment claims. In *Stone*, the Court held that "'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.'" *Chavez v. Weber*, 497 F.3d 796, 801-802 (8th Cir. 2007) (quoting *Stone*, 428 U.S. at 482).

In order to overcome this bar, a petitioner must show the State "'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez*, 497 F.3d at 802 (quoting *Willett v. Lockhart*, 37 F.3d 1265, 1271-72 (8th Cir. 1994)).

*Exhaustion and Procedural Default*

As set forth in 28 U.S.C. § 2254:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)  (i)  there is an absence of available State corrective process; or
>
> (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore present the substance of each federal constitutional claim to the state courts *before* seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska

Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks and citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

### *Nebraska Postconviction Law Relevant to Procedural Default*

Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002).

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law

and the facts.  *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable."  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Id.*  However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court.  *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim.  The claim must have been 'adjudicated on the merits' in state court.").

9

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted). The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### *Review of Newman's Claims*

After careful review, and applying the law as summarized above, Newman's claims can be resolved in a summary fashion. I address each claim briefly below.

### *Claim One*

This claim relates to Newman's poverty affidavit that both the Nebraska Court of Appeals and the Nebraska Supreme Court found was insufficient to vest them with jurisdiction. This is entirely a matter of state law. There is no showing that Newman was treated any differently than any other person or prisoner by the Nebraska appellate courts. Moreover, the record demonstrates that Newman knew how to file a proper affidavit (as he did in his direct appeal) and that Newman had a notary public available at the prison (as shown by the notarized postconviction motion he

filed). I have no authority to review this claim under the guise of federal habeas corpus.

### *Claim Two*

This claim relates to Newman's assertion that he was treated unfairly because the judge handling his postconviction action allowed Nebraska to respond in an untimely fashion, and because Newman was not given the opportunity to file a reply brief. Once again, this is purely a matter of state law for which Newman can find no relief under the federal habeas corpus statute. His postconviction action was carefully and throughly discussed in an eight-page opinion by the state district judge.

### *Claim Three and Claim Four*

These claims relate to the suppression issues raised before the state trial court. Under the doctrine of *Stone v. Powell*, these claims cannot be reviewed, as Newman was provided a full and fair opportunity to litigate these claims before the state trial judge and before the Nebraska Court of Appeals. Moreover, and in addition to the careful review by the state district judge, the Nebraska Court of Appeals thoroughly reexamined the claims and found them wanting. He was provided the process he was due under the Fourth Amendment precedent of the Supreme Court. Even if *Stone v. Powell* did not bar review, the deference doctrine would doom these claims.

### *Claim Five and Claim Six*

In these claims, Newman complains about his detention in the Douglas County jail, and he complains about the ineffective assistance of his counsel when litigating or appealing the suppression motions. These claims have been procedurally defaulted in that Newman failed to present these claims to the Nebraska appellate courts in "one complete round." He has shown no cause or prejudice to avoid this default.

## *Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, Newman has failed to make a substantial showing of the denial of a constitutional right. I am not persuaded that the issues raised in the petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, I will not issue a certificate of appealability in this case.

IT IS ORDERED that judgment will be entered for the Respondent and against the Petitioner, providing that the Petitioner shall take nothing, and his habeas corpus petition (Filing no. 1) is denied and dismissed with prejudice. No certificate of appealability will be issued. A separate judgment will be entered.

DATED this 20th day of January, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge